UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

    MCM Natural Stone, Inc.,                Bankruptcy Case No. 22-20009-PRW
                                                     Chapter 11
                      Debtor,

_____

In re:

    CM&M Products, LLC,                  Bankruptcy Case No. 22-20010-PRW
                                                       Chapter 11
                      Debtor,

_____

In re:

    CM&M Products, LLC,                  Bankruptcy Case No. 22-20011-PRW
                                                       Chapter 11
                      Debtor,

_____

**DECISION AND ORDER
GRANTING MOTIONS TO DISMISS CHAPTER 11 CASES**

PAUL R. WARREN, U.S.B.J.

      Subchapter V of the Code is intended to eliminate many of the obstacles small business debtors face while reorganizing in Chapter 11. 8 *Collier on Bankruptcy* ¶ 1180.01 (16th ed. rev). While eliminating many of Chapter 11's administrative costs, it also streamlines the process by requiring the debtor to file a plan "not later than 90 days after the order for relief." 11 U.S.C. § 1189(b). By its very nature, a Subchapter V case is expected to move quickly and efficiently. This trio of cases is the very antithesis of the characteristics of a Subchapter V case. These cases more

closely resemble the "Cheese Shop"[1] sketch, in which John Cleese found the shop frustratingly uncontaminated by any cheese. These cases have been frustratingly uncontaminated by the Debtors' compliance with the Code, Rules and UST reporting requirements.

Since their inception, each of these related Debtors has failed to abide by the United States Trustee's Operating Guidelines. *See* U.S. Department of Justice, Office of the United States Trustee, Region 2, *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees* (rev. Dec. 27, 2019). As a result, the UST has moved to dismiss these cases for cause, under 11 U.S.C. §§ 1112(b)(1) and 1112(b)(4)(H), alleging as "cause," the Debtors' failure to provide proof of closing of pre-petition bank accounts, the failure to open "debtor in possession" accounts at the outset of the cases, and the failure to correct a duplicative filing. (Case No. 22-20009, No. ECF No. 49 at 6-8; Case No. 22-20010, ECF No. 44; Case No. 22-20011, ECF No. 41).[2] The UST asserts that dismissal would be in the best interests of creditors and the estate. (Case No. 22-20009, ECF No. 49 at 10). Evans Bank, N.A. has moved to convert these cases, under 11 U.S.C. § 1112(b)(1), alleging as "cause," the Debtors' "unauthorized use of cash collateral substantially harmful to 1 or more creditors," as set forth under 11 U.S.C. § 1112(b)(4)(D). (Case No. 22-20009, ECF No. 56 ¶¶ 36-40; Case No. 22-20011, ECF No. 48). Evans Bank argues that conversion would be in the best interests of creditors and the estate. (Case No. 22-20009, ECF No. 56 ¶¶ 29-41). In addition to the issues raised by both the UST and Evans Bank, the Court has observed that the

---

[1] Episode 33, Monty Python's Flying Circus, BBC (1972).

[2] The motions filed in these cases seek relief arising out of nearly identical operative facts. CM&M Products (Case Nos. 22-20010 and 22-20011) are duplicate filings. They were filed the same day as MCM Natural Stone, the main case. (Case No. 22-20009). Unless otherwise stated, all citations to the record will be in reference to MCM Natural Stone. One (or both?) of the duplicative cases is a shell corporation. (ECF No. 49 ¶ 14 n.3). The Court will issue a single decision, to be entered on the docket in each case.

2

Debtors have failed to file timely monthly operating reports since these cases were filed. The Court granted the requests of both the UST and Evans Bank to shorten time for a hearing on their respective motions. (ECF Nos. 51, 55). The Debtors filed opposition to the motions, offering nothing more than unsupported promises to get their act together. (ECF Nos. 66, 67). But no meaningful curative action has been taken by the Debtors—no timely monthly operating reports have been filed, counsel has never been appointed, and the Subchapter V Plans that were filed on the eve of the hearing on the motions contain a myriad of internal inconsistencies,[3] leaving the Court with little hope for the future success of these cases.

The Court finds that cause exists to convert or dismiss these cases. Because the security interest of Evans Bank encumbers all of the assets of each Debtor, dismissal is in the best interests of creditors and the estate. The motions of the UST are **GRANTED** under 11 U.S.C. §§ 1112(b)(1), (b)(4)(H), and (b)(4)(F). The cases are **DISMISSED** under 11 U.S.C. § 1112(b)(1). The motions of Evans Bank, requesting that the cases be converted to Chapter 7, are **DENIED** as moot.

# I.
# JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

---

[3] For example, CM&M Products' Plan states that "[t]he Debtor's proposed Plan shall provide a dividend to unsecured creditors of $295,000." (Case No. 22-20011, ECF No. 57 at 3). However, under Article 4 of the Plan "[u]nsecured creditors shall receive no dividend." (*Id.* at 5).

## II.

## FACTS

MCM Natural Stone filed a petition under Chapter 11 on January 7, 2022. (ECF No. 1). The same day, CM&M Products filed a petition under Chapter 11. (Case No. 22-20010, ECF No. 1). Later that day an identical petition was filed by CM&M Products, which appeared to be a duplicative filing. (Case No. 22-20011, ECF No. 1). A few days later, the Debtors amended their petitions to seek relief under Subchapter V. (ECF No. 8).[4] The Debtors collectively list assets of approximately $350,000 and liabilities of approximately 3.5 million dollars. (*See* Case No. 22-20009, ECF No. 1, Official Form 206Sum & ECF No. 8-1, Sch. A/B; Case No. 22-20011, ECF No. 1, Official Form 206Sum).

The three petitions were filed on a Friday. Early in the morning the following Monday, the UST reached out to Debtors' counsel to inquire about the apparently duplicative filings. (ECF No. 49 ¶ 5 n.1). That same week, the Court also attempted to contact counsel (repeatedly) concerning the apparent error. The Court's phone calls were not returned and the error has never been corrected.[5] Additionally, no "first day motions" were filed by the Debtors (ever). Less than two weeks after the filing of the petitions, the UST's initial debtor interview was held. (*Id.* at ¶ 4). A

---

[4] Counsel for the Debtor in Case No. 22-20010 also attempted, by amendment, to change the name of the Debtor from CM&M Products, LLC to CM&M Industries, Inc. (Case No. 22-20010, ECF No. 8).

[5] The Court's frustration with a lack of communication from Debtors' counsel was echoed at the hearing on the motions to dismiss or convert by the Subchapter V Trustee, who indicated that he had not received any communication or information from Debtors' counsel since the inception of the cases. One of the Subchapter V Trustee's duties is to "facilitate the development of a consensual plan of reorganization." 11 U.S.C. § 1183(b)(7). At the hearing, the Court conveyed its concerns regarding counsel's failure to communicate and questioned whether this has impacted counsel's ability to competently represent his clients in these cases.

4

representative of the UST once again inquired about the duplicative filing, and further emphasized the need for counsel to "file small business documents pursuant to Section 1116, the need for a cash collateral motion, the requirement to open accounts at an approved depository or bring a motion to maintain existing accounts." (*Id.* at ¶ 5).

On February 9, 2022, the § 341 meeting of creditors was held. (*Id.* at ¶ 6). Debtors' counsel expressed an intention to dismiss the duplicate case, and further stated that the Debtors intended to file a motion to continue using existing bank accounts. (*Id.* at ¶¶ 7, 8). A motion to shorten time for a hearing on an "emergency motion" to continue using bank accounts was filed the next day.[6] (ECF No. 43). Such a motion is typically a first day motion in a Chapter 11 case. But here the motion was filed over a month after the petition was filed, during which period the Debtors failed to comply with the requirement that they open debtor-in-possession accounts and close pre-petition accounts. The "emergency motion" was a procedural oddity—it did not request a hearing but, instead, advised creditors (and the Court) that if they did not object within 7 days the Debtor was authorized to continue to use its pre-petition accounts. (*Id.* at ¶ 3). The Court denied the request to shorten time and instructed the Debtors to "file and serve such motion in compliance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure." (ECF No. 44). No such motion was ever filed, despite the Court's directive.

A Subchapter V status conference was held by the Court on March 8, 2022, as required by § 1188 of the Code. (ECF No. 48). At the conference, the Debtors acknowledged their continuing unauthorized use of cash collateral, their failure to dismiss the duplicate case, and their failure to

---

[6] The motion to shorten time for a hearing on the motion to continue using bank accounts was made only in MCM Natural Stone. (Case No. 22-20009).

5

Case 2-22-20009-PRW, Doc 74, Filed 04/08/22, Entered 04/08/22 14:59:15, Description: Main Document , Page 5 of 10

open debtor-in-possession accounts and to close all pre-petition accounts.[7] (ECF No. 49 ¶¶ 12-13). The Court also observed on the record that no monthly operating reports had been filed by the Debtors.

After the conclusion of the status conference, counsel did file a motion to dismiss the first CM&M Products case. (Case No. 22-20010, ECF No. 41). A deficiency notice was issued, advising that "Per Chambers, there are too many errors in the motion to process and it will not be set for a hearing as a result. Counsel is responsible for reviewing the submission to identify the many errors." (Case No. 22-20010, ECF No. 42). The "errors" in the motion included (to name but a few) using the wrong address of the United States Courthouse, scheduling a hearing date for April 7, *2014* (a date that passed nearly 8 years ago), and identifying Case No. 22-200*12* as the target of dismissal (a case entirely unrelated to the CM&M Products filings). No corrective motion was filed by Debtors' counsel—demonstrating that it was an act of pure optimism for the Court to have issued the deficiency notice in the first place. In response to the inactivity by Debtors' counsel, the UST filed motions to dismiss in each case, followed by Evans Bank's motions to convert. (ECF Nos. 49, 56). The Debtors filed objections to the motions to dismiss or convert (ECF Nos. 65, 66) and a hearing was held on April 7, 2022.[8]

---

[7] The UST's Operating Guidelines require that "[a]ll pre-petition bank accounts controlled by the debtor must be closed immediately upon the filing of the petition, and the debtor shall immediately open a new debtor-in-possession operating, payroll, and tax accounts at a United States Trustee Authorized Depository." (U.S. Department of Justice, Office of the United States Trustee, Region 2, *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees*, at ¶ 5 (rev. Dec. 27, 2019). While the UST reported at the hearing on the motions to dismiss or convert that the UST had received proof of the opening of debtor-in-possession accounts—although not immediately opened upon the filing of the cases—the UST had not received proof that the Debtors closed pre-petition bank accounts.

[8] Late in the evening on the day before the hearing, the Debtors filed Subchapter V Plans in Case Nos. 22-20009 and 22-20011. (ECF Nos. 67 and 57 respectively). In addition, just after midnight on

6

# III.

# DISCUSSION

A. <u>Cause Has Been Demonstrated Under 11 U.S.C. § 1112(b)</u>

As this Court has previously recognized and which applies with equal force here:

> Dismissal or conversion of a Chapter 11 case must be granted, under 11 U.S.C. § 1112(b), if the moving party demonstrates "cause" for that relief, and if the Court finds that exceptions under 11 U.S.C. §§ 1112(b)(1) and (2) do not apply. The exception under 11 U.S.C. § 1112(b)(1) arises where, on request of a party in interest, the Court determines that the appointment of a Chapter 11 Trustee, rather than conversion or dismissal, is in the best interests of creditors and the estate. No party in interest has requested the appointment of a Trustee under 11 U.S.C. § 1112(b)(1) and 11 U.S.C. § 1104. The exception under 11 U.S.C. § 1112(b)(2) only applies where the Court finds and identifies unusual circumstances establishing that conversion or dismissal is not in the best interests of creditors and the estate, coupled with a showing under 11 U.S.C. §§ 1112(b)(2)(A) and (B). No showing of such unusual circumstances has been made by any party in connection with the motions before the Court.

*In re Spencerport Dev., LLC*, Case No. 14-21154 (PRW), 2014 Bankr. LEXIS 4909, at *3-4 (Bankr. W.D.N.Y. Dec. 4, 2014) (Warren, J.). Here, as in *Spencerport*, where no party in interest has requested the appointment of a Chapter 11 Trustee or examiner, and there exist no "unusual circumstances," the Court finds that the exceptions under §§ 1112(b)(1) and (2) do not apply.

Under 11 U.S.C. § 1112(b)(1):

> The moving party bears the initial burden to establish, by a preponderance of the evidence, the existence of cause to convert or dismiss a Chapter 11 case. If the moving party establishes cause—and the Court finds (as it has) that the exceptions

---

the morning of the hearing, MCM Natural Stone filed an inartful and procedurally deficient motion requesting an expedited hearing on a request for *nunc pro tunc* approval to use Evans Bank's cash collateral. (Case No. 22-20009, ECF No. 68). Although the cash collateral motion was not before the Court at the hearing, the Court informed counsel that, under Supreme Court precedent, *nunc pro tunc* relief is not available where, as here, the relief the Debtor wishes to have applied retroactively was never sought nor granted in the first instance. *See Roman Cath. Archdiocese of San Juan, P.R. v. Feliciano*, 140 S. Ct. 696, 700-01 (2020). Counsel acknowledged being unfamiliar with that case.

7

under § 1112(b)(1) and (b)(2) do not apply—the statute commands that the Court *must* convert or dismiss the Chapter 11 case.

*In re Anvil Holdings, LP*, 595 B.R. 622, 629 (Bankr. W.D.N.Y. 2019) (Warren, J.) (some citations omitted).

The UST has demonstrated cause to dismiss or convert these cases. The uncontroverted facts show that the Debtors failed to provide notice or proof of the opening of debtor-in-possession accounts at the outset of the cases, as required by Rule 2015 FRBP and 11 U.S.C. § 704. The Debtors failed to provide proof of closing of pre-petition bank accounts, as required by the UST's Operating Guidelines. The Debtors failed to address the duplicative filing, which was brought to their attention immediately after the filing of the petitions. Counsel for the Debtors has never been appointed by this Court. And the Debtors failed to file any first day motions, instead simply proceeding as they wished despite the absence of Court approval. Cause to convert or dismiss has been amply demonstrated under 11 U.S.C. § 1112(b)(4)(H). Additionally, the Debtors have failed to file timely monthly operating reports,[9] a requirement of the UST's Operating Guidelines, providing

---

[9] The UST's Operating Guidelines provide that "[t]he monthly operating report shall be filed with the Clerk of the Bankruptcy Court and served upon the United States Trustee." U.S. Department of Justice, Office of the United States Trustee, Region 2, *Operating Guidelines and Reporting Requirements for Debtors in Possession and Trustees*, at 4 (rev. Dec. 27, 2019). The operating report is due the 15th day of the month. *Id.* at n.3. The cases were filed on January 7, 2022. To date, Debtors were required to file monthly operating reports for January and February. A monthly operating report for February 2022 was attached as an exhibit to the Plan filed in Case No. 22-20009 (it was not separately filed on the docket). (ECF No. 67, Ex. C). The February operating report was due on March 15. It was filed on April 6, 2022. A monthly operating report for January was due on February 15. It was filed after the hearing on the motions to dismiss or convert was concluded April 7, 2022—almost two months after its due date. (ECF No. 71). Monthly operating reports have not ever been filed in Case Nos. 22-20010 and 22-20011. The Court notes that the January and February monthly operating reports contain protected financial account information that is required to be redacted under Rule 9037(a) FRBP. MCM Natural Stone has waived (perhaps unwittingly) the protections of Rule 9037. *See* Rule 9037(g) FRBP.

8

an independent basis for the Court to find cause under 11 U.S.C. § 1112(b)(4)(F). Having found cause under 11 U.S.C. § 1112(b)(1), the Court is statutorily compelled to either convert or dismiss these cases.

**B. Dismissal Serves the Best Interests of Creditors and the Estate**

The decision of whether to convert or dismiss these Chapter 11 cases turns on which remedy will best serve the interests of creditors and the estate. The UST contends that dismissal would best serve those interests. Evans Banks argues that conversion would better serve those interests. The UST is correct. Dismissal would best serve the interests of creditors and the estate.

Evans Bank argues that cause to convert these cases to Chapter 7 exists under § 1112(b)(4)(D) of the Code, for the unauthorized use of cash collateral. (ECF No. 56 ¶¶ 36-41). The Debtors concede that they continued to use cash collateral without permission post-petition. (ECF No. 49 ¶ 13). However, in its motion, Evans Bank simply points to the Debtors' admitted unauthorized use, without alleging (or even mentioning) how the unauthorized use of cash collateral was *substantially harmful*. (*See* ECF No. 56 ¶¶ 36-41). The plain language of 11 U.S.C. § 1112(b)(4)(D) requires a showing of both the "unauthorized use of cash collateral" *and* a showing of *substantial harm* to a creditor or creditors. By failing to meet its burden to show substantial harm, Evans Bank cannot prevail on its motion. While Evans Bank expressed concern about the possibility that the Debtors might file again as a basis to support conversion, that fear is not a substitute for the need to demonstrate that the unauthorized use of cash collateral has caused substantial harm.

This is a two-party dispute, despite the claim of Evans Bank to the contrary. The Debtors scheduled total debt of 3.5 million dollars—$2,766,118.49 of which is secured debt owed to Evans Bank. (*See* Case No. 22-20009, ECF No. 1, Official Form 206Sum & ECF No. 56 ¶ 23; Case No.

9

22-20011, ECF No. 1, Official Form 206Sum). There are no other secured creditors. (Case No. 22-20009, ECF No. 1, Sch. D; Case No. 22-20011, ECF No. 1, Sch. D). The Debtors have personal property valued at approximately $350,000, with no real property or any other assets. (*See* Case No. 22-20009, ECF No. 8-1, Sch. A/B; Case No. 22-20011, ECF No. 1, Official Form 206Sum).

The security interest held by Evans Bank covers the entire value of the Debtors' combined assets. As a result, if the Debtors' cases were converted to Chapter 7, there is no likelihood of any distribution to unsecured creditors. No bankruptcy purpose would be served in converting these cases to Chapter 7.[10] The appropriate remedy here is for the Court to order these cases dismissed. Evans Bank can pursue its remedies in state court.

## IV.

## CONCLUSION

The Court finds that the UST demonstrated cause exists to convert or dismiss these Chapter 11 cases, by a preponderance of the evidence. The Court finds, in the exercise of its discretion, that dismissal of these cases is in the best interests of creditors and the estate. The motions of the UST are **GRANTED** under 11 U.S.C. §§ 1112(b)(1), (b)(4)(H), and (b)(4)(F). The cases are **DISMISSED** under 11 U.S.C. § 1112(b)(1). The motions of Evans Bank are, as a consequence, **DENIED** as moot.

**IT IS SO ORDERED.**

Dated: April 8, 2022  /s/
    Rochester, New York  HON. PAUL R. WARREN
                                   United States Bankruptcy Judge

---

[10] At hearing, counsel to Evans Bank expressed a preference for conversion rather than dismissal based upon Evans Bank's desire to have the Court supervise an auction of the Debtors' assets. The UST objected, pointing out that there are not enough assets to administer in these cases. Without assets to administer, the Trustee would essentially be working on behalf of a secured creditor. The objection of the UST is well taken.